UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRED DAVIS III,

Plaintiff,

v.

ABDEL JOSE ESPINAL-VASQUEZ, AND ND LOGISTICS, LLC,

Defendants.

No. 21-CV-7819 (KMK)

OPINION & ORDER

Appearances:

Lora Helen Gleicher, Esq.
Silbowitz, Garafola Silbowitz Schatz & Frederick
Great Neck, NY
*Counsel for Plaintiff*

Howard R. Schatz, Esq.
Silbowitz, Garafola Silbowitz Schatz & Frederick
New York, NY
*Counsel for Plaintiff*

Michael V. Campanile, Esq.
Morris Duffy Alonso & Faley
New York, NY
*Counsel for Defendants*

Don P. Palermo, Esq.
Palermo Law
Media, PA

KENNETH M. KARAS, United States District Judge:

Plaintiff brought the instant Action on September 18, 2021, seeking to recover for personal injuries sustained in a car accident. (*See* Not. of Removal, Ex. 2 (Compl.) (Dkt. No. 3-2).) On December 16, 2022, the Court entered an Order of Dismissal after learning that the Parties reached a settlement agreement. (Order (Dkt. No. 25).) Before the Court is Plaintiff's Motion to extinguish any claim his prior attorney, Don P. Palermo ("Palermo"), has to an attorneys' fee in this case. (Not. of Mot. (Dkt. No. 39).) For the foregoing reasons, Plaintiff's Motion is denied.

## I. Background

### A. Factual Background

Fred Davis III, Plaintiff in the underlying Action, was involved in a car accident on September 1, 2018. (Aff. of Howard Schatz in Supp. of Mot. ("Schatz Aff.") ¶ 2 (Dkt. No. 40); Aff. of Don Palermo in Opp. to Mot. ("Palermo Aff.") ¶ 2.)[1] He initially retained Palermo Law to represent him concerning the injuries he sustained and any potential claims against Defendants. (Schatz Stmt. ¶ 3; Palermo Stmt. ¶ 3.) Palermo represents that, over the next two-and-a-half years, he researched the case, obtained Plaintiff's medical records, and conducted multiple interviews with Plaintiff. (Letter from Don Palermo, Esq. to Court (Feb. 2, 2023) ("Palermo Feb. 2 Ltr.") at 2.)[2]

[1] Palermo's submissions are not available on the docket as he has not appeared in this case. (*See generally* Dkt.)

[2] Much of this dispute developed in several letters to the Court from Palermo and Schatz, which the Court excerpts where relevant. (*See generally* Dkt.) In addition to pertinent information, both attorneys' letters contain various accusations and ad hominem attacks. Those statements are just as unprofessional as they are irrelevant. The Court expects better of those who practice—or who seek to practice—in this District.

On March 17, 2021, Mr. Palermo sent a demand letter to Defendants' insurance carrier seeking to settle the case for $500,000. (Letter from Don Palermo, Esq. to Leanne Welch (Mar. 17, 2021) ("Demand Ltr.") at 3.)[3] He then entered settlement negotiations with the carrier and obtained a "last, best" offer of $115,000. (Email from Don Palermo to Matthew C. Daudier (Sept. 1, 2018) ("Daudier Corresp.").) Palermo claims that he was "fully prepared to file suit" if Mr. Davis rejected that offer and that he had several New York attorneys in mind to serve as local counsel and to help him obtain pro hac vice admission. (Letter from Don Palermo, Esq. to Court (Jan. 23, 2023) ("Palermo Jan. 23 Ltr.") 2.) But instead of pursuing that path, Plaintiff discharged Palermo Law and, on July 19, 2021, hired Lora Gleicher and Howard Schatz ("Schatz") of Silbowitz, Garfola, Silbowitz & Schatz, LLP. (Schatz Aff. ¶ 3; Palermo Aff. ¶ 3.)

Shortly after that substitution, on July 28, 2021, Palermo mailed Plaintiffs' case file to Schatz and flagged that the statute of limitations would soon expire as to Mr. Davis's personal injury claim. (Palermo Jan. 23 Ltr. at 2.)[4] Schatz filed the instant Action in New York State Supreme Court soon after. (Schatz Aff. ¶ 5; Palermo Aff. ¶ 5; *see also* Compl.) Defendants Removed the action to federal court, (Not. of Removal), where the Parties later settled for $205,000. (Mem. of Law in Supp. of Mot. ("Schatz Mem.") 1 (Dkt. No. 41).)[5]

Of that $205,000, $136,666.67 represented Plaintiff's share of the proceeds, and $68,333.33 represented a legal fee. (Schatz Aff. ¶ 6; Palermo Aff. ¶ 6; *see also* Schatz Aff., Ex. D ("Closing Statement").) Although Defendants proceeded with Plaintiff's payment, Palermo

---

[3] Palermo attached this demand letter as an exhibit to his paper submissions.

[4] Palermo's letter appears to contain a typographical error. Based on the timing of Palermo's discharge, the Court assumes that he mailed the file on July 28, 2021, not "July 28, 2010." (Palermo Jan. 23 Ltr. at 2.)

[5] This brief appears to have been filed twice. (*Compare* Dkt. No. 41, *with* Dkt. No. 44.)

objected to Defendants releasing attorneys' fees and asserted an attorneys' lien on those funds. (Schatz Aff. ¶ 6; Palermo Aff. ¶ 6; *see also* Letter from Don Palermo, Esq. to Howard Schatz, Esq. (Feb. 24, 2023) ("Palermo Feb. 24 Ltr."); Daudier Corresp. (advising Defendants' insurer that it "should not issue a settlement check to my now former client and/or his new attorney until the issue of my attorney lien is formally resolved").)

B. Procedural History

The Court held a conference regarding this dispute on April 21, 2023, where it adopted a briefing schedule on Schatz's proposed Motion to extinguish Palermo's lien. (*See* Order (Dkt. No. 35).) Pursuant to that schedule, Schatz first attempted to file the instant Motion on May 31, 2023, but encountered some docketing difficulties. (*See* Dkt. Nos. 36–38; Not of Mot.; Schatz Mem..) Palermo mailed his response to the Court on June 2, 2023. (*See* Letter from Don Palermo, Esq. to Court (June 2, 2023); Mem. of Law in Opp. to Mot. ("Palermo Mem."); Palermo Aff.) And on June 18, 2023, Schatz filed his reply, along with the papers he attempted to file before. (Reply Aff. in Supp. of Mot. ("Schatz Reply") (Dkt. No. 45).)

On January 8, 2024, the Court requested supplemental briefing on two questions regarding the New York Court of Appeals' rules authorizing temporary law practice. (Order (Dkt. No. 46).) *See* 22 N.Y.C.R.R. § 523.2. Palermo responded via email on January 16, 2024, (Letter Br. to Court ("Palermo Supp. Mem.")), and Schatz responded on January 17, 2024, (Aff. of Howard Schatz in Supp. of Mot. ("Schatz Supp. Mem.") (Dkt. No. 47)). Palermo then submitted a supplemental affirmation responding to some points in Schatz's submission. (Resp. to Supp. Aff. ("Palermo Supp. Aff.").)

II. Discussion

The instant Motion presents a dispute between Plaintiff's current and former counsel. Plaintiff's current counsel, Schatz, seeks to bar his former counsel, Palermo, from obtaining any

portion of the settlement in this case. (*See generally* Schatz Mem.) Schatz argues that Palermo does not have a valid attorneys' lien on this Action and that, even if he did, Palermo cannot receive fees because he engaged in the unauthorized practice of law. (*Id*. at 2–6.) If fee apportionment is appropriate, the lawyers disagree about the amount Palermo should receive. (*See* Schatz Mem. 7–9; Palermo Mem. 8). As explained below, the Court finds that Palermo did not engage in unauthorized law practice and that he may apply for an equitable portion of the fee in this case.

A. Jurisdiction

The Court first observes that it has jurisdiction to decide this dispute. "It is well settled that a federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes . . . between litigants and their attorneys when the dispute relates to the main action." *Levitt v. Brooks*, 669 F.3d 100, 103 (2d Cir. 2012) (quoting *Chesley v. Union Carbide Corp*., 927 F.2d 60, 64 (2d Cir. 1991)); *accord Germosen-Vasquez v. Cohen, Frankel, & Ruggiero, LLP*, No. 21-CV-7487, 2022 WL 2236347, at *1 (S.D.N.Y. June 22, 2022). That power also covers "fee dispute[s] between attorneys," including attorneys who have been discharged. *See Mason v. City of New York*, No. 12-CV-5885, 2016 WL 2766652, at *2 (S.D.N.Y. May 12, 2016) (collecting cases and deciding such a dispute); *see also Garcia v. Teitler*, 443 F.3d 202, 208–09 (2d Cir. 2006) (recognizing district court may hear "a fee dispute between attorneys in an underlying personal injury suit"). And exercising jurisdiction is appropriate under the circumstances. There is no question that this dispute "over attorney[s'] fees to be paid from the settlement proceeds" is "related" to Plaintiff's underlying claim. *See Mason*, 2016 WL 2766652, at *2. To boot, each of the four discretionary factors that courts routinely consider favors exercising jurisdiction: (1) the Court is familiar with the litigation and "the quality of work performed by the attorneys"; (2) the Motion implicates the Court's "responsibility to protect officers of the court"; (3) considering the

dispute in this posture is convenient for the Parties; and (4) bringing this dispute under the umbrella of a single proceeding preserves judicial economy. *See Germosen-Vasquez*, 2022 WL 2236347, at *1 (listing relevant factors) (quoting *Levitt*, 669 F.3d at 104); *accord Mason*, 2016 WL 2766652, at *2.

B. Basis for Fees

Schatz seeks to bar Palermo from receiving a fee based on his conduct, but neither counsel discusses the basis for a discharged attorney receiving a fee in the first place. The Court addresses that issue up front because it provides important context for Palermo's potential award.

1. Remedies for Discharged Counsel

"Where, as here, the Court's jurisdiction over the underlying litigation is based on diversity of citizenship, the Court applies New York law in deciding an attorneys' fees dispute." *Crout v. Haverfield Int'l, Inc.*, 348 F. Supp. 3d 219, 227–28 (W.D.N.Y. 2018) (citing *RLS Assocs., LLC v. United Bank of Kuwait PLC,* 464 F. Supp. 2d 206, 213 (S.D.N.Y. 2006) ("[A]ttorneys' fees are considered substantive under the *Erie* doctrine, and should be analyzed under state law in diversity cases.")); *see also Ingevity Corp. v. Regent Tek Indus., Inc*., No. 22-CV-565, 2022 WL 18859010, at *10 (E.D.N.Y. Nov. 23, 2022) (collecting cases), *report and recommendation adopted*, No. 22-CV-565, 2023 WL 2553896 (E.D.N.Y. Mar. 17, 2023). New York law, in turn, provides three "cumulative remedies" to former attorneys seeking compensation for their services, assuming they were discharged without cause[6]: "(1) a charging

[6] An attorney dismissed for cause "is not entitled to compensation or a lien." *Maher v. Quality Bus Serv., LLC*, 42 N.Y.S.3d 43, 46 (App. Div. 2016); *see also Callaghan v. Callaghan*, 852 N.Y.S.2d 273, 274 (App. Div. 2008) (same). To trigger a hearing, and ultimately a ruling, on the issue, a client "must make a prima facie showing of [] cause for the discharge." *Roe v. Roe*, 985 N.Y.S.2d 335, 337 (App. Div. 2014) (alteration adopted) (quotation marks omitted). That showing calls for "specific allegations" amounting to something "more than a generalized dissatisfaction with counsel's services." *Id*. at 336–37; *see also Antonmarchi v. Consol. Edison*

lien, (2) a retaining lien, and/or (3) a plenary action in quantum meruit." *Roe*, 985 N.Y.S.2d at 337 (citing *Balestriere PLLC v. BanxCorp*, 947 N.Y.S.2d 7, 8 (App. Div. 2012)). While only the first and third remedies are relevant to this Motion, the Court reviews all three for the sake of completeness.

First, a charging lien is a "security interest in the favorable result of litigation" that attaches "[f]rom the commencement of an action" once "the attorney [] appears for a party." *Antonmarchi*, 678 F. Supp. 2d at 240–41 (first quoting *Chadbourne & Parke, LLP v. AB Recur Finans*, 794 N.Y.S.2d 349, 350 (App. Div. 2005), then N.Y. Judiciary Law § 475). The value of a charging lien depends on various factors, including the "difficulty of the case," the "results achieved," and the "terms of the original retainer." *Lightbox Ventures, LLC v. 3rd Home Ltd.*, No. 16-CV-2379, 2018 WL 5255169, at *4 (S.D.N.Y. Oct. 22, 2018) (quotation marks omitted).

Second, a retaining lien "gives an attorney the right to keep, with certain exceptions, all of the papers, documents and other personal property of the client which have come into the lawyer's possession in his or her professional capacity as long as those items are related to the subject representation." *Crout*, 348 F. Supp. 3d at 228 (quoting *Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*, 754 N.Y.S.2d 220, 223 (App. Div. 2002)). That lien is

---

*Co. of New York*, 678 F. Supp. 2d 235, 241 (S.D.N.Y. 2010) ("Courts typically find a discharge 'for cause' where there has been a significant breach of legal duty." (quotation marks omitted)).

Schatz briefly asserts that "the plaintiff discharged Palermo for cause as he had the case almost three years, did not file suit and did not want to accept the low settlement offer that Palermo was recommending should be accepted." (Schatz Mem. 9) That single, unsworn, statement is far from sufficient to make out a prima facie case of discharge for cause. *See Roe*, 985 N.Y.S.2d at 337 (declining to consider issue where the "plaintiff tendered only the affidavit of her current attorney, who . . . simply suggested—without elaboration—that there may have been grounds to discharge the firm for cause"). And it does not explain why Palermo's choices constitute negligence or misconduct, as opposed to "reasonable strategic choices regarding litigation." *See Callaghan*, 852 N.Y.S.2d at 274.

"independent of the proceeds of the lawsuit" and is a means to obtain compensation in exchange for "turnover of the [case] file." *Id*.

Third, and finally, even if an attorney lacks a lien, "he or she still retains a claim for the reasonable value of legal services rendered." *Crout*, 348 F. Supp. 3d at 229 (citing *Hampshire Grp. Ltd. v. Scott James Co.*, No, 14-CV-2637, 2015 WL 5306232, at *15 (S.D.N.Y. July 27, 2015) ("[T]he absence of a charging lien or a retaining lien is not dispositive . . . the attorney may still seek a recovery sounding in quantum meruit.")). Quantum meruit recovery is "called for even where the attorney discharged . . . was employed under a contingent fee contract." *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004). And in determining an amount in that scenario, "a court may consider, inter alia, (1) the contingent nature of the representation, (2) the results achieved by the attorney before discharge, and (3) the client's actual chance of success at the time the attorney was discharged." *Id*. (citations omitted).

2. Application

The papers are not clear about which remedy justifies Palermo's requested fee.[7] Normally, that would be Palermo's burden. *OneWest Bank, N.A. v. Hawkins*, No. 14-CV-4656, 2015 WL 5706945, at *9 (E.D.N.Y. Sept. 2, 2015) ("The law is clear that the party seeking fees bears the burden of proof."). But the Court is mindful that Palermo is responding to *Schatz's* Motion to bar fees, which appears to assume Palermo has a valid claim but for his conduct. One possibility comes from Schatz, who represents that Palermo "demanded a lien," for "the sum of $41,000.00." (Schatz Aff. ¶ 9.) Although Palermo denies that statement, (Palermo Aff. ¶ 9), he

[7] To be clear, Palermo has not formally moved this Court for fees. (*See* Dkt.) Schatz's Motion takes as given the fact that Palermo seeks a fee and argues that he cannot receive one because of alleged unauthorized law practice. (*See generally* Schatz Mem.)

appears to deny it only with respect to the requested amount, (*see id.*). Separately, Palermo states that he seeks "a fair share of the attorneys' fee in this matter," a phrase which sounds in quantum meruit. (Palermo Mem. 7 (emphasis omitted).)

Based on the facts, encapsulated in counsel's affidavits, it appears that only the quantum meruit remedy applies. To start, a retaining lien "is founded upon physical possession, and an attorney may forfeit its retaining lien by voluntarily giving away any of the items to which it may have attached." *Crout*, 348 F. Supp. 3d at 230 (quoting *Schneider*, 754 N.Y.S.2d at 223). Palermo at no point claims "possession of any of Plaintiff's assets." *Id.* And even if he did, Palermo likely forfeited any retaining lien when he mailed the case file to Schatz. (*See* Jan. 23 Palermo Ltr. at 2, 4 (stating Palermo sent "the entire file to [Schatz] via Federal Express").) *See also Lai Ling Cheng v. Modansky Leasing Co.*, 539 N.E.2d 570, 573 (N.Y. 1989) (stating a retaining lien is "dependent upon . . . continued possession of the file" and that attorney "relinquished his lien" when "he released the file"). Palermo may yet retain other property, but counsel have discussed no such claim.

Similarly, Palermo falls short of the requirements for a charging lien. Those liens are only available "[f]rom the commencement of an action," N.Y. Judiciary Law § 475, to an attorney who has "appeared for the client" or has affixed his name "to the pleadings, motions, records, briefs, or other papers submitted in the matter," *Crout*, 348 F. Supp. 3d at 230 (*Picciolo v. State*, 732 N.Y.S.2d 60 (App Div. 2001)). Plaintiff discharged Palermo prior to commencing the underlying Action, (*see* Palermo Mem. 4–5; *see id.* at 6 (stating Palermo did not "file[] the Complaint")), and Palermo has not appeared on Plaintiff's behalf, (*see* Dkt.). Where, as here, an attorney only "performed preliminary services for the client," he has "the right to compensation on a quantum meruit basis only." *See Picciolo*, 732 N.Y.S.2d at 62.

C. Unauthorized Practice of Law

The balance of Schatz's Motion argues that Palermo engaged in the unauthorized practice of law because Palermo, an out-of-state attorney, rendered legal services to Plaintiff without seeking admission to the New York bar. (Schatz Mem. 2–6.) Assuming that conduct constitutes unauthorized law practice, Palermo "may not recover legal fees" he is otherwise entitled to. *State ex rel. Stephen B. Diamond, P.C. v. My Pillow, Inc.*, 119 N.Y.S.3d 439, 440 (Sup. Ct. 2020) (citing *Spivak v. Sachs*, 211 N.E.2d 329, 330 (N.Y. 1965)). As New York courts have long held, payment for unauthorized practice constitutes an "illegal transaction" to which the Court cannot give effect. *Spivack*, 211 N.E.2d at 331; *see also Balbuena v. IDR Realty LLC*, 845 N.E.2d 1246, 1259 (N.Y. 2006) (citing *Spivack* and noting parties cannot recover for "work [] performed that was outlawed"); *see also Charlebois v. J.M. Weller Assocs., Inc.*, 531 N.E.2d 1288, 1291 (N.Y. 1988) (disallowing quantum meruit recovery on the same grounds). Palermo contends that he only rendered services "from outside New York" and therefore did not violate New York law. (Palermo Supp. Mem. 2)

1. New York Judiciary Law § 478 & Part 523.2

Starting off, New York Judiciary Law § 478 provides that:

> It shall be unlawful for any natural person to practice or appear as an attorney-at-law or as an attorney and counselor-at-law for a person other than himself or herself in a court of record in this state, or to furnish attorneys or counsel or an attorney and counsel to render legal services, or to hold himself or herself out to the public as being entitled to practice law as aforesaid, or in any other manner, or to assume to be an attorney or counselor-at-law, or to assume, use, or advertise the title of lawyer, or attorney and counselor-at-law, or attorney-at-law or counselor-at-law, or attorney, or counselor, or attorney and counselor, or equivalent terms in any language, in such manner as to convey the impression that he or she is a legal practitioner of law or in any manner to advertise that he or she either alone or together with any other persons or person has, owns, conducts or maintains a law office or law and collection office, or office of any kind for the practice of law,

> without having first been duly and regularly licensed and admitted to practice law in the courts of record of this state, and without having taken the constitutional oath.

That statute is not a model of clarity. To simplify somewhat, § 478 "makes it unlawful for anyone other than a person who has been admitted to practice law in New York and has taken the requisite oath, to practice as an attorney in this state." *Gover v. Savyon*, 975 N.Y.S.2d 758, 760 (App. Div. 2013) (quotation marks omitted); *see also Silverman v. Eccleston L., LLC*, 173 N.Y.S.3d 78, 80–81 (App. Div. 2022) (stating § 478 "prohibits the unauthorized practice of law"). Although "practice" is not precisely defined, § 478's text, and related precedent, make clear that it includes "render[ing] legal services" in addition to appearing as an attorney "in a court of record." N.Y. Judiciary Law § 478; *see also Servidone Const. Corp. v. St. Paul Fire & Marine Ins. Co.*, 911 F. Supp. 560, 565–66 (N.D.N.Y. 1995) (collecting cases and noting "[i]t is well-settled in New York that '[t]he practice of law forbidden in this State . . . includes legal advice and counsel'" (quoting *Spivack*, 211 N.E.2d at 330)). That broad purview is in line with the statue's purpose: "to protect [New York] citizens against the dangers of legal representation and advice given by persons not trained, examined and licensed for such work, whether they be laymen or lawyers from other jurisdictions." *Spivack*, 211 N.E.2d at 331.

The statute is silent, however, about how to handle out-of-state attorneys. The text of § 478 contains no geographic limitation and would appear to impose a universal bar on *all* attorneys who "render legal services" without a New York law license. But it is a "settled rule of statutory interpretation," that legislation is presumed not to "operate outside the territorial jurisdiction of the state enacting it" unless stated otherwise. *Rodriguez v. KGA Inc.*, 64 N.Y.S.3d 11, 12 (App. Div. 2017) (quoting *Goshen v. Mutual Life Ins. Co. of N.Y.*, 730 N.Y.S.2d 46 (App. Div. 2001)); *see also* N.Y. Stat. Law § 149 (McKinney) ("The laws of one state can have no force and effect in the territorial limits of another jurisdiction, in the absence of the consent of

the latter.”). Accordingly, several New York cases hold that § 478 does not automatically bar the “provision of legal services . . . from outside New York.” *Silverman*, 173 N.Y.S.3d at 81; *see also Gover*, 975 N.Y.S.2d at 760 (“The legal services that the plaintiff provided to the defendant from outside of New York did not violate Judiciary Law § 478 and, thus, did not violate New York law.”); *El Gemayel v. Seaman*, 533 N.E.2d 245, 249 (N.Y. 1988) (holding Lebanese lawyer did not violate § 478 when he advised New York resident on foreign proceeding); *cf. Matter of Hart*, 149 N.Y.S.3d 182, 184 (App. Div. 2021) (affirming denial of summary judgment motion arguing that New Jersey firm violated § 478 by advising New York client).

The analysis gets murkier if the foreign attorney ever comes to New York or gets involved in a New York proceeding. Consider first the Court of Appeals’ decision in *Spivack*. There, a California divorce attorney violated § 478’s predecessor statute by, among other things: spending two weeks in New York attending meetings on a New York divorce matter, examining “drafts of separation agreements,” providing his opinion about the “proper jurisdiction for the divorce suit,” and attempting to persuade the client to discharge her local counsel. *Spivak*, 211 N.E.2d at 330–31 (quotation marks omitted). *Spivack* cautioned that § 478 was not intended to “outlaw customary and innocuous practices,” *id*. at 331; and the court recognized that it was impractical to “penalize every instance in which an attorney from another State comes into our State” given the “numerous multi-State transactions and relationships of modern times,” *id*. Nevertheless, the attorney’s extensive New York activity constituted the “practice of law *in* New York.” *Id*. (internal quotation marks omitted) (emphasis added).

The Court of Appeals later distinguished *Spivack* in *El Gemayel*. That case involved a Lebanese attorney who represented a New York client in proceedings abroad. In contrast to *Spivack*, and despite “substantial litigation in Lebanon,” the foreign attorney had only “incidental

and innocuous" contact with New York, consisting "entirely of phone calls" to the client and a single visit after the Lebanese proceeding ended. *El Gemayel*, 533 N.E.2d at 249. That limited contact "did not, without more, constitute the 'practice' of law" in New York. *Id*.

Importantly, *El Gemayel* did not turn on the fact that the attorney practiced "foreign law." *Id*. The Court of Appeals referenced an older case where § 270 (§ 478's predecessor) applied to bar "the activities of a Mexican attorney" because he "practiced foreign law *in his New York office* by advising members of the public on Mexican law." *Id*. (citing *In re Roel*, 144 N.E.2d 24, 26 (N.Y. 1957)). The issue thus was not whether "[t]he practice of Lebanese law" fell within "the purview of the statute," but whether the lawyer's work within the jurisdiction was "the 'practice' of Lebanese law." *Id*.

Those two cases continue to inform the inquiry today. *See Silverman*, 173 N.Y.S.3d at 81 (citing *El Gemayel*); *see also State ex rel. Stephen B. Diamond, P.C.*, 119 N.Y.S.3d at 439 (citing *Spivack*); *Gover*, 975 N.Y.S.2d at 760 (citing *El Gemayel* and *Spivack*). And follow-on cases provide little detail about when "innocuous" contact ends, *El Gemayel*, 533 N.E.2d at 249, and "substantial[] involve[ment]" begins, *see id*. (construing *Spivack*). Also unaddressed is whether an attorney may engage in unauthorized law practice without ever setting foot in New York. While the statute's protective purpose would seem to apply equally to virtual and in-person services, some authority suggests otherwise. For instance, in *Gover*—a case on which both attorneys rely—an unlicensed attorney was not allowed to recover for services "undisputably rendered to the defendant in New York," *see Gover*, 975 N.Y.S.2d at 760; *see also Gover v. Savyon*, 943 N.Y.S.2d 792 (Sup. Ct. 2012) (explaining that unlicensed attorney rendered those services from the client's New York basement), but could recover for work performed in Israel, where he was licensed, *see Gover*, 975 N.Y.S.2d at 760. Although the Court is aware of one

treatise suggesting § 478 does not apply if a lawyer does not "ever set[] foot" in New York, *see* Simon's NY Rules of Prof. Conduct § 5.5:5 (2023 ed.), it is hard to draw that general statement from the caselaw's fact specific holdings.

If an attorney wants to practice "in New York" without a New York law license, that attorney still has some options available. For one, an attorney admitted in another jurisdiction may be "admitted to pro hac vice," N.Y. Judiciary Law § 478(4), at a court's discretion to "participate in a particular matter," *Neal v. Ecolab Inc*., N.Y.S.2d 433, 434 (App. Div. 1998). Additionally, the New York Court of Appeals allows unadmitted lawyers to "provide legal services on a temporary basis in [the] State." 22 N.Y.C.R.R. § 523.2. To qualify, the attorney must be (1) licensed and (2) have good standing in one or more non-New York jurisdictions, and (3) seek provide services authorized both in their home jurisdiction and in New York. *Id*. § 523.2(a)(1)–(3). If those conditions are met, the lawyer may provide temporary services:

(i) in association with a New York lawyer who "assumes joint responsibility for the matter";
(ii) "reasonably related to a pending or potential proceeding," assuming the lawyer expects to be authorized to appear;
(iii) related to an alternative dispute resolution proceeding where the lawyer need *not* obtain pro hac vice admission; or
(iv) that "are reasonably related to the lawyer's practice" in a jurisdiction where they are licensed.

*Id*. § 523.2(a)(3)(i)–(iv). The Court is aware of one New York case to apply subsection (a)(3)(iii), allowing an out-of-state lawyer to participate in an arbitration, *see Silverman*, 173 N.Y.S.3d at 81, and another that applied subsection (a)(3)(i) to an unadmitted attorney supervised by New York lawyers, *see O'Gorman v. Kitchen*, No. 20-CV-1404, 2021 WL 1292907, at *3 (S.D.N.Y. Apr. 7, 2021). It is not aware of, and Counsel do not provide, New York caselaw discussing the scope of "temporary" practice generally. Comments to ABA Model Rule 5.5—which contains virtually identical language—state that "[t]here is no single test to

determine whether a lawyer's services are provided on a 'temporary basis'" and that "[s]ervices may [still] be 'temporary,'" even if they occur "on a recurring basis, or for an extended period of time." M.R.P.C. Rule 5.5 cmt. 6 (2023 ed.); *see also Dennett v. Archuleta*, 982 F. Supp. 2d 166, 171 (D.R.I. 2013) (same).

Tying those threads together, law practice by out-of-state attorneys may fall within the purview of § 478. To determine § 478's applicability, the Court must examine "whether [the lawyer's] activities *in New York* appropriately can be considered the 'practice'" of law. *El Gemayel*, 533 N.E.2d at 248 (emphasis added). To satisfy that inquiry, Schatz must at the very least demonstrate that Palermo had more than "incidental" contact with this jurisdiction while representing Plaintiff. Even then, Palermo's in-state services may still constitute permissible temporary representation.

2. Application

Murky caselaw aside, Schatz has not demonstrated a violation of § 478.[8] In his first submission, Schatz simply assumed that Palermo violated § 478 because he "is not an attorney admitted in the state of New York." (Schatz Mem. 4, 7.) But the Court of Appeals expressly declined to adopt a "per se rule" regarding foreign attorneys, instead focusing on the particulars of their contact with the jurisdiction. *See El Gemayel*, 533 N.E.2d at 249; *see also Silverman*, 173 N.Y.S.3d at 81. And Schatz has failed to allege *any* contact with the jurisdiction. To start, Plaintiff was a resident of Pennsylvania while Palermo represented him. (*See* Compl. ¶ 1

[8] Although a fee applicant bears the burden when they affirmatively seek a fee, the same is not true for litigants that seek fee forfeiture. In the related context of clients who discharge attorneys for cause—which strips the attorney of fees—the burden is on the client to demonstrate cause. *Farb v. Baldwin Union Free Sch. Dist.*, No. 05-CV-0596, 2011 WL 4465051, at *9 (E.D.N.Y. Sept. 26, 2011) ("It is the client's burden to establish that the attorney was discharged for valid cause." (citing *DeLucia v. Village of Monroe*, 580 N.Y.S.2d 91, 92 (App. Div. 1992))).

(alleging that, as of 2021, Plaintiff "was, and still is, a resident of . . . Pennsylvania").) Schatz does not suggest that Palermo, a Pennsylvania attorney,[9] ever set foot in New York or that he even made virtual contact with the state, not to mention contact above an innocuous level. (*See generally* Schatz Mem.) Notably absent, too, are many of the problematic circumstances in *Spivack*. In contrast to the attorney hired to run the New York divorce proceeding, Palermo's work apparently consisted exclusively of fact development, obtaining medical records, and other preparatory work. (*See, e.g*., Schatz Mem. 7.) Schatz does not argue that Palermo worked on the matter from New York, that Palermo drafted court documents, or that he inappropriately influenced Plaintiff's decision about where to file suit. Without more, those services—rendered by an out-of-state attorney to an out-of-state client—fall outside § 478's reach.

Although Palermo obtained a settlement offer, that step does not necessarily run afoul of the *Spivack*, *El Gemayel* line of cases. Per *Spivack*, § 478 does not reach every negotiation "relating to [] New York," 211 N.E.2d at 331, and it does not bar a foreign attorney from resolving claims on behalf of a New York client, provided their contact with New York is limited, *see El Gemayel*, 533 N.E.2d at 249. To be sure, the Court can conceive of a situation where a foreign lawyer who advises a New York client and settles a New York claim on their

[9] In his supplemental brief, Schatz states that Palermo has not "presnt[ed] any form of evidentiary proof to the [C]ourt that he is even licensed to practice law in any jurisdiction," that has not presented a "copy of his retainer agreement," and that he therefore cannot claim a fee. (Schatz Supp. Mem. 6–7.) For one thing, the Court is not considering a fee application from Palermo, it is considering *Schatz*'s motion to foreclose fees. Also, Palermo responded that he is, in fact, a member in good standing of the Pennsylvania bar, and he attached a copy of his retainer agreement with Plaintiff. (*See* Palermo Supp. Aff. 3–4.) The Court accepts Palermo's representations for the purposes of this Motion. In addition, the Supreme Court of Pennsylvania website lists a Don Paul Palermo, Jr. as an active member of the bar with an address that matches Palermo Law. *See* "Palermo, Don Paul, Jr.," https://www.padisciplinaryboard.org/for-the-public/find-attorney/attorney-detail/73133 (accessed Jan. 23, 2024). Of course, Schatz has supplied no proof that *he* is an active member of the New York bar, but the Court has extended him the same consideration.

behalf may violate the statute. Virtual legal advice about New York law, targeted at a New York resident, may provide the requisite nexus to the jurisdiction, and a failure to address that scenario would invite out-of-state lawyers to circumvent § 478's protections for New York citizens. But this case is different. Here, a Pennsylvania attorney negotiated on behalf of his Pennsylvania client to resolve a common-law negligence claim against non-New York defendants. While the claim may have arisen under New York common law,[10] the negotiation's connection to the jurisdiction is attenuated at best.

Schatz's citations to other state decisions reinforce that contact-based limitation. (*See* Schatz Supp. Mem. 3–4.) For instance, in *Peterson v. Anderson*, the offending attorney lived in the jurisdiction where he should have been licensed and agreed to "help prepare the case for trial" in that jurisdiction without ever being admitted pro hac vice. 745 P.2d 166, 167–68 (Ariz. Ct. App. 1987). Schatz is correct that *Birbrower*—a case that has been roundly criticized for overreaching, *Prudential Equity Grp., LLC v. Ajamie*, 538 F. Supp. 2d 605, 608 (S.D.N.Y. 2008) (noting *Birbrower*'s "controversial" holding and prompt legislative repeal)—held that an attorney could violate California's unauthorized practice statue by engaging in exclusively virtual representation. *See Birbrower, Montalbano, Condon & Frank v. Superior Ct.*, 949 P.2d 1, 6 (Cal. 1998). But even *Birbrower* recognized that "sufficient contact with the state" was required and that a person did not "*automatically* practice[] law 'in California'" whenever they

[10] Palermo appeared to prepare the case as if he would litigate in New York, despite his claim that he could have filed against individual defendants elsewhere. (*See* Palermo Jan. 23 Ltr. at 2 (claiming he would have worked with one of "several attorneys licensed to practice in New York").) Under New York law, "the law of the jurisdiction where the tort occurred"—here, New York—"will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *See Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 423 (S.D.N.Y. 2013) (quoting *Padula v. Lilarn Props. Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994)).

"virtually enter[ed] the state by telephone, fax, e-mail, or satellite." *Id*. (emphasis in original). Here, again, those contacts are not present.

Further separating this case from the likes of *Spivack* are Palermo's representations that he would have worked with local counsel to be admitted pro hac vice if Plaintiff chose to file suit. (Palermo Jan. 23 Ltr. at 2.) Palermo, who has obtained pro hac vice admission in this district before, (*see* Palermo Mem. 6), recognizes that he must be admitted to appear before a court of record.[11] That recognition—which Schatz does not challenge—supports the Court's sense that Palermo was not attempting to circumvent § 478's limitations.

Finally, to the extent there is any remaining uncertainty, two additional strands of caselaw make the Court unwilling to expand § 478's scope. First, as a "general rule," New York courts instruct that "fee forfeitures are disfavored" in interpreting Judiciary Law provisions. *Matter of Hart*, 149 N.Y.S.3d at 184 (citing *Benjamin v. Koeppel*, 650 N.E.2d 829, 831 (N.Y. 1995) (noting "such forfeitures may be particularly inappropriate where there are other regulatory sanctions for noncompliance")). And second, assuming Palermo's work benefited the case to some degree, Schatz would be "unjustly enriched if allowed to avoid [distributing] payment for [those] legal services." *See Gover*, 975 N.Y.S.2d at 760. Indeed, Palermo states that Schatz already reimbursed him for $663.84 in case costs, (Palermo Mem. 5), which suggests that Schatz recognized Palermo's work on this case, however small.

---

[11] Contrary to Palermo's assertion, his prior pro hac vice admission does not apply in future cases. (*See* Palermo Mem. 6.) "In this District, pro hac vice admissions are governed by Local Rule 1.3(c) which provides, in relevant part: '[a] member in good standing of the bar of any state or of any United States District Court may be permitted to argue or try *a particular case* in whole or in part as counsel or advocate, upon motion . . . .'" *United States v. CLGE, Inc.*, No. 14-CV-6792, 2015 WL 2124792, at *1 (E.D.N.Y. May 6, 2015) (emphasis added) (italics omitted) (quoting Local Rule 1.3(c)).

Because Palermo's services did not violate § 478, the Court need not determine whether he is covered by the New York Court of Appeals rules authorizing temporary law practice.[12]

* * *

Because there are no grounds for fee forfeiture, Plaintiff's Motion is denied. Despite extensive back and forth, there appears to be some room for agreement about a fair fee for Palermo's services. (*See* Schatz Reply 5 (arguing Palermo is entitled to "at most[] a nominal percentage of the fee for the minimal work performed"; Palermo Mem. 7 (appearing to agree with Schatz that a 3-5% fee is appropriate for his work on this case).) Given that, Schatz and Palermo shall confer and submit a joint letter stating their positions about an appropriate quantum meruit fee for Palermo's services. If they fail to come to an agreement, Palermo may submit a fee application along with contemporaneous records detailing the hours billed to this matter. *See Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 149 (2d Cir. 2014) (stating attorneys "must document [an] application [for fees]" with such records).

[12] Palermo, who would presumably benefit from Part 523.2, never argues that it applies. (*See generally* Palermo Mem.; Palermo Supp. Mem.)

## III. Conclusion

For the aforementioned reasons, Plaintiff's Motion is denied. Schatz and Palermo shall submit a joint letter by no later than April 5, 2024, setting out their respective positions on an appropriate quantum meruit fee.

SO ORDERED.

Dated: March 20, 2024
White Plains, New York

KENNETH M. KARAS
United States District Judge